IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

APRIL PFANNENSTIEL,

    Plaintiff,

    v.

MARS WRIGLEY CONFECTIONARY US, LLC,

    Defendant.

Case No. 19-02096-JAR

## MEMORANDUM AND ORDER

Plaintiff April Pfannenstiel filed this action against her former employer, Defendant Mars Wrigley Confectionary US, LLC ("Mars"), alleging retaliation under Title VII of the Civil Rights Act of 1964 and the Family and Medical Leave Act ("FMLA"), and retaliatory discharge under Kansas law. On January 29, 2021, the Court issued a Memorandum and Order granting in part and denying in part Mars's motion for summary judgment.[1] This matter is now before the Court on Mars's Motion for Reconsideration (Doc. 68). For the reasons discussed below, the Court denies the motion.

**I.    Background**

The underlying facts are set forth in detail in the Court's summary judgment order and are not repeated at length here.[2] In short, this case stems from the termination of Pfannenstiel's employment in 2018. Pfannenstiel claims that Mars fired her in retaliation for reporting sexual harassment and retaliatory harassment, using FMLA leave, and filing a workers' compensation

---

[1] Doc. 64.

[2] *See id.* at 5–15.

claim. Based on these allegations, Pfannenstiel brought three claims against Mars: (1) retaliation under Title VII; (2) retaliation under the FMLA; and (3) retaliatory discharge under Kansas law.

Mars then moved for summary judgment on all three claims, arguing that Pfannenstiel could not establish a prima facie case on any of her claims and, even if she could, she could not show that Mars's stated legitimate, non-retaliatory reason for terminating her employment was merely pretextual. On January 29, 2021, the Court granted summary judgment in favor of Mars on the FMLA retaliation and retaliatory discharge claims, but it denied summary judgment on the Title VII retaliation claim. The Court found that Pfannenstiel had met her prima facie burden and that a genuine dispute of material fact exists as to whether Mars's stated reason for terminating her employment was a pretext for retaliation. Mars now asks the Court to reconsider that denial.

## II.   Legal Standard

D. Kan. Rule 7.3(b) governs motions to reconsider non-dispositive orders, while Fed. R. Civ. P. 59(e) and 60 govern motions to reconsider dispositive orders.[3] A party may seek reconsideration on the following grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice.[4] While a motion to reconsider is available where the court has "misapprehended the facts, a party's position, or the controlling law," such a motion does not permit a party to "revisit issues

---

[3] D. Kan. Rule 7.3; *Coffeyville Res. Refin. & Mktg., LLC v. Liberty Surplus Ins. Corp.*, 748 F. Supp. 2d 1261, 1264 (D. Kan. 2010).

[4] D. Kan. Rule 7.3(b); *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 948 (10th Cir. 1995)); *see Fears v. Unified Gov't of Wyandotte Cnty.*, No. 17-2668-KHV, 2018 WL 5435403, at *1 (D. Kan. Oct. 29, 2018) ("In considering [a motion to reconsider an order disposing of some but not all claims], the Court applies the legal standards of Rule 59(e) . . . and D. Kan. Rule 7.3, which are essentially identical.").

already addressed or to advance arguments that could have been raised in prior briefing."[5] "A party's failure to present its strongest case in the first instance does not entitle it to a second chance in the form of a motion to reconsider."[6] Whether to grant a motion for reconsideration is left to the court's discretion.[7]

**III.    Discussion**

Mars moves for reconsideration under the third basis for relief—the need to correct clear error or prevent manifest injustice. Mars asserts that the Court erred (1) "in ruling that [Pfannenstiel] and [Jacob] Edwards were similarly-situated" employees who "violated rules of comparable seriousness," and (2) "in concluding that Mars should have waited to receive the police report before terminating [Pfannenstiel]."[8] Based on these asserted errors in the Court's pretext analysis, Mars asks the Court to grant its motion and enter judgment in its favor on Pfannenstiel's Title VII retaliation claim.

At the outset, the Court notes that its finding that Pfannenstiel met her summary judgment burden of showing pretext did not depend on comparator evidence. And the Court did not conclude—contrary to Mars's assertion—that Mars should have waited to receive the police report before terminating Pfannenstiel's employment. At summary judgment, Mars claimed that it fired Pfannenstiel for lying to Associate Relations Manager Nichole Phillips during a company investigation, "which is an integrity issue in violation of [its] policies."[9] In particular, Mars

---

[5] *Coffeyville*, 748 F. Supp.1264 (citing *Servants of Paraclete*, 204 F.3d at 1012).

[6] *A.H. ex rel. Hohe v. Knowledge Learning Corp.*, No. 09-2517-DJW, 2011 WL 1466490, at *4 (D. Kan. Apr. 18, 2011) (quoting *Sithon Mar. Co. v. Holiday Mansion*, 177 F.R.D. 504, 505 (D. Kan. 1998)).

[7] *Coffeyville*, 748 F. Supp. 2d at 1264 (citing *In re Motor Fuel Temperature Sales Pracs. Litig.*, 707 F. Supp. 2d 1145, 1166 (D. Kan. 2010)).

[8] Doc. 69 at 2, 7.

[9] Doc. 54 ¶ 93.

alleged that Pfannenstiel made three false statements: (1) that a detective informed Pfannenstiel that Edwards filed the police report; (2) that Edwards reported that Pfannenstiel and a former coworker hated Mars and planned to "shoot up the property";[10] and (3) that Pfannenstiel was arrested because officers had been unable to contact her to discuss the allegations in the police report.  Pfannenstiel made these three statements to Phillips over the phone after Phillips asked her why a detective from the Topeka Police Department had shown up at work to speak with her.  The Court found that Pfannenstiel had provided evidence that calls into question whether Phillips honestly believed that Pfannenstiel had lied to her and acted in good faith on that belief, making summary judgment inappropriate.  Thus, even if the Court were to agree that it erred in finding that Pfannenstiel had produced evidence that she was treated differently from a similarly situated employee who violated work rules of comparable seriousness, she still provided sufficient pretext evidence to survive summary judgment.

    A.    **Comparator Evidence**

Under Title VII, a plaintiff may show pretext with evidence that she "was treated differently from similarly-situated employees" who violated work rules of comparable seriousness.[11]  At the summary judgment stage, Mars did not respond to Pfannenstiel's argument that she and Edwards were similarly situated.  Nor did Mars respond to Pfannenstiel's argument that its failure to discipline or terminate Edwards for "ma[king] a bogus police report against" her is evidence that she was treated differently.[12]  Mars offers no explanation for its failure to rebut these arguments earlier, and it is well-settled that a motion for reconsideration is not a

---

[10] Doc. 54-10 at 22.

[11] *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1196 (10th Cir. 2011) (citing *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167–68 (10th Cir. 2007)); *see also Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 540 (10th Cir. 2014).

[12] Doc. 59 at 48.

vehicle to advance arguments that could have been made before the entry of judgment.[13] Nevertheless, Mars now asserts for the first time that Edwards was not similarly situated to Pfannenstiel and that Edwards did not violate company policy at all. Mars's attempt to use its motion for reconsideration to raise arguments that it could have presented at the summary judgment stage, but did not, is itself grounds for denial of the motion.

But even if the Court were to consider the arguments in Mars's motion for reconsideration, they would not change the outcome. First, Mars asserts that Pfannenstiel and Edwards were not similarly situated employees because, unlike Pfannenstiel, Edwards is a qualified individual with a disability who is protected by the American with Disabilities Act ("ADA"). And after learning about Pfannenstiel's prior criminal charges, Edwards requested a medical accommodation "to not work near" her because he claimed he felt unsafe.[14] Pfannenstiel, Mars observes, made no similar medical accommodation requests. In Mars's view, Edwards's "ADA-qualified disability gave him ADA protection with regard to his complaints about [Pfannenstiel], a protection that [Pfannenstiel] did not have."[15]

For Title VII purposes, "[a]n employee is similarly situated to the plaintiff if the employee deals with the same supervisor and is subject to the 'same standards governing performance evaluation and discipline.'"[16] "A court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees in determining whether they are similarly

---

[13] *See Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

[14] Doc. 69 at 3.

[15] *Id.* at 3–4.

[16] *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000) (quoting *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997)).

situated."[17]  Despite correctly stating the applicable law, Mars does not argue that Edwards dealt with a different supervisor than Pfannenstiel or that Edwards was subject to different standards governing performance evaluation and discipline.  In fact, it is uncontroverted that Pfannenstiel and Edwards "worked the same shift on the same team with the same supervisor."[18]  To the extent Mars is now arguing that the two were not similarly situated because their employment circumstances differed, no evidence suggests—and Mars does not contend—that Edwards's ADA-qualifying disability or medical accommodation request somehow exempted him from Mars's policies relating to integrity and honesty.  A jury could reasonably conclude that, in all relevant respects, Edwards and Pfannenstiel were similarly situated.

Second, Mars asserts the Court erred in concluding that Pfannenstiel had established a genuine issue of material fact as to whether she was treated differently than Edwards for conduct of comparable seriousness.  For context, Pfannenstiel complained to Mars that she believed Edwards had filed a false police report against her in retaliation for "[getting] some of his friends fired" after she reported sexual harassment.[19]  Mars later received a copy of the first page of a Non Criminal Incidents Report issued by the Topeka Police Department confirming that Edwards had filed the police report.[20]  That first page states that Edwards accused Pfannenstiel of making "disturbing comments"—"while they were both [at] work[]"—about "wanting to kill

---

[17] *Aramburu*, 112 F.3d at 1404.

[18] Doc. 63 ¶ 18.

[19] Doc. 54-10 at 10–11.

[20] In its summary judgment order, the Court suggested that Mars received the entirety of the Non Criminal Incidents Report, which consisted of two pages, after Pfannenstiel was terminated.  The Court clarifies that Mars did not receive the second page of the report until it was produced in discovery in this case.  Thus, prior to this litigation, Mars had not seen the following conclusion set forth on the second page: "I see no evidence that would lead me to prolong this case.  Nothing Mr. Edwards said leads me to believe that she poses a threat to him or anyone else.  This case will be closed at this time."  Doc. 59-15 at 3.

people, being involved in drive-by shootings, and hanging out with a killer."[21] It also indicates that law enforcement spoke with Pfannenstiel about the allegations, and what she reported to the police is similar to what she told Mars: that "Edwards [was] angry with her because of an ongoing issue she had with sexual harassment involving two of their co-workers" who were then "disciplined or removed from their positions."[22] Yet, Mars admits in its motion to reconsider that it never even conducted an investigation to determine whether Pfannenstiel had actually made those statements at work, or whether Edwards made up the allegations.

Mars now claims that Edwards did not violate company policy when he filed the police report against Pfannenstiel because Mars does not have a policy that prohibits employees from "reporting concerns related to local crimes to the police," which would be unenforceable as contrary to public policy.[23] Under Kansas law, an employee may not be terminated in retaliation for "good-faith reporting or threatening to report a serious infraction of rules, regulations, or law pertaining to the public health, safety and the general welfare by a coworker or employer."[24] But Pfannenstiel never argued—and the Court, of course, did not find—that Edwards violated some nonexistent, unenforceable policy against whistleblowing; the focus was on Mars's polices relating to integrity and honesty, the same policies under which Mars claims it terminated Pfannenstiel.

Mars's attempt to thread the needle by arguing that Edwards could not have violated company policy because Mars has no policy against whistleblowing is unavailing for summary judgment purposes. As Pfannenstiel points out, Mars's argument rests on an assumption that

---

[21] *Id.* at 2.

[22] *Id.*

[23] Doc. 69 at 4.

[24] *Ali v. Douglas Cable Commc'ns*, 929 F. Supp. 1362, 1387 (D. Kan. 1996) (quoting *Aiken v. Bus. & Indus. Health Grp., Inc.*, 886 F. Supp. 1565, 1573 (D. Kan. 1995)).

Edwards engaged in protected whistleblowing, which "must have been done out of a good faith concern over the wrongful activity reported."[25]  But viewing the evidence in the light most favorable to Pfannenstiel, as the Court must, a jury could reasonably find that Edwards did not make the report in good faith and that his allegations against Pfannenstiel were false, particularly in light of his prior conduct toward her.  And a jury could also reasonably find that making a false report to the police that a coworker, while on the job, admitted that she was involved in a drive-by shooting and wanted to kill people presents "an integrity issue" (to use Mars's words) and is of comparable seriousness to making false statements during a company investigation.

In asserting that Edwards and Pfannenstiel did not engage in conduct of comparable seriousness, Mars advances the same argument it previously made at summary judgment—that Phillips honestly believed that Pfannenstiel had lied to her.  But again, whether Phillips actually believed that Pfannenstiel had lied is in dispute.  The Court previously addressed this issue at length, and Mars does not allege that the Court misapprehended its position, the facts, or the controlling law.  The Court will not revisit that issue again here.

Ultimately, the Court is not convinced that it erred in finding that Pfannenstiel has established a genuine issue of material fact as to whether she was treated differently from Edwards, a similarly situated employee, for conduct of comparable seriousness.  But in any case, as explained above, the Court need not and did not base its finding of sufficient evidence of pretext on comparator evidence.

### B.     Business Judgment

Perhaps most disconcerting about Mars's motion for reconsideration is its misconstrual of the Court's summary judgment order.  Mars asserts that the Court "conclude[ed] that Mars

---

[25] *Id.* at 1389 (quoting *Palmer v. Brown*, 752 P.2d 685, 690 (Kan. 1988)).

should have waited to receive the police report before terminating Plaintiff," improperly focusing its inquiry on whether Mars's investigation was optimal, rather than on whether Mars honestly believed its stated reason for terminating Pfannenstiel's employment and acted in good faith on that belief.[26] To be sure, the Court's role is not to second-guess an employer's honestly held business judgment—even if erroneous.[27] But the Court simply did not conclude that Mars should have waited for a copy of the police report before firing Pfannenstiel or otherwise tell Mars "how [it] should have conducted its investigation."[28] The Court asked whether a reasonable jury could find Mars's stated rationale "unworthy of credence and hence infer [Mars] did not act for the asserted [non-retaliatory] reason[]," and it answered that "determinative question" in the affirmative.[29] Because the Court did not commit clear error, Defendant's motion for reconsideration is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Mars Wrigley Confectionary's Motion for Reconsideration (Doc. 68) is **denied**.

**IT IS SO ORDERED.**

Dated: May 13, 2021

S/ Julie A. Robinson  
JULIE A. ROBINSON  
CHIEF UNITED STATES DISTRICT JUDGE

---

[26] Doc. 69 at 7.

[27] *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1308 (10th Cir. 2017) (quoting *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006)).

[28] Doc. 69 at 8.

[29] *Dewitt*, 845 F.3d at 1308 (quoting *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1196 (10th Cir. 2011)).